UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OLGA MARTINEZ,

    Plaintiff,

v.                                     Case No. 16-C-1538

MIDWEST RESTORATION LLC,

    Defendant.

**DECISION AND ORDER**

Plaintiff Olga Martinez alleges that her former employer, Midwest Restoration LLC, violated Title VII by discriminating against her on the basis of her sex in September 2014. On September 29, 2017, Midwest filed a motion for summary judgment, arguing that it is not an "employer" as defined by 42 U.S.C. § 2000e(b). Martinez submitted a motion for leave to file a sur-reply and subsequently amended her motion. The court will grant Martinez' amended motion for leave to file a sur-reply and deny her original request as moot. Viewing the evidence in the light most favorable to her, however, the evidence she offers does not establish that Midwest had a sufficient number of employees to meet Title VII's definition of "employer." Midwest's motion for summary judgment will therefore be granted.

**I. Summary Judgment Standard**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for

summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysicial doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012).

**II. Applicability of Title VII**

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Midwest asserts that Martinez cannot establish a Title VII violation as a matter of law because it is not an "employer" as defined by the statute. Title VII defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." § 2000e(b). Midwest maintains that it did not employ fifteen employees during 2013 and 2014. The plaintiff bears the burden of proving the number of employees her employer had, "including the duration of their employment, 'with some element of precision.'" *Wilson v. Comtrust LLC*, 249 F. Supp. 2d 993, 997 (N.D. Ill. 2003) (quoting *Norman v. Levy*, 767 F. Supp. 1441, 1449 (N.D. Ill. 1991)).

In support of its motion, Midwest submitted a declaration from its office manager, Brenda Grams, who is responsible for maintaining personnel records for Midwest. ECF No. 19-1, ¶¶ 1–2.

Grams states in her declaration that she compiled the full employment records for Midwest for calendar years 2013 and 2014. She then sets forth the number of employees Midwest employed in each of the two-week pay periods over the two-year period based on her review of the company's payroll records. *Id.* ¶ 3. For the two-week pay period ending on January 9, 2013, through the period ending on April 3, 2013, Grams states that Midwest employed only one employee, both full-time and part-time. *Id.* ¶¶ 4–10. From April 17, 2013, through September 5, 2013, Midwest had three employees, both full-time and part-time. *Id.* ¶¶ 11–21. Midwest then dropped down to two employees until the pay period ending October 17, 2013, when it jumped back up to three. *Id.* ¶¶ 22–24. Beginning with the pay period ending October 30, 2013, until February 5, 2014, Midwest had four employees. *Id.* ¶¶ 25–32. It then fluctuated between four and eight employees through the remainder of the year. At no time, according to Grams, were there more than eight employees on Midwest's payroll. *Id.* ¶¶ 33–56.

Midwest's approach is consistent with the payroll method of determining whether an employer meets Title VII's 15-employee threshold approved by the Supreme Court in *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202 (1997). Under the payroll method, the number of employees is determined by the number of individuals who appear in the employer's payroll. *Id.* at 206–07. The payroll method avoids the administratively unwieldy task of trying to determine how many employees were actually working on each workday. *Id.* at 208. The latter approach "would turn the coverage determination into an incredibly complex and expensive factual inquiry." *Id.* at 210. Yet the payroll approach poses other problems where, as here, the employer uses temporary employees who do not appear on the employer's own payroll.

3

Consistent with the payroll approach, Grams only counted the employees Midwest directly employed. Midwest also uses temporary employees it obtains through temporary employment agencies to conduct its business. Temporary employees can be considered employees of the company they are placed with for determining whether such company has the requisite number of employees to make it subject to Title VII. *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 408 (4th Cir. 2015). Grams has provided no information as to the number of temporary employees who worked for Midwest during 2013 or 2014.

In support of her contention that Midwest had the requisite number of employees, including temporary employees, for at least twenty weeks in 2014, Martinez retained Carrie Cappelle, an associate accountant at Schenck SC, to create a spreadsheet that purports to summarize the total number of employees Midwest had each week during the relevant time period. After reviewing the employment records of two temporary staffing agencies that provided temporary employees to Midwest, Cappelle concluded Midwest employed a total of sixty-nine temporary employees at various times between February 3, 2014, and October 6, 2014. According to the spreadsheet, Midwest employed as many as thirty-two temporary employees in one week, but there were only five weeks in which at least fifteen temporary employees worked at Midwest. ECF No. 22-7.

After determining the number of temporary employees Midwest hired each week, Cappelle added additional employees, increasing the weekly total by eleven or seventeen individuals. She did so in order to account for what Martinez believes were additional employees directly employed by Midwest. First, Cappelle added six employees to each week's total based on a statement contained in Midwest's response to Martinez' interrogatories. In particular, Midwest stated that it had five permanent "job site employees" and employed "approximately five (5) or six (6) additional

employees at any given time in order to cover administrative, fill-in, and various other as-needed job tasks." ECF No. 22-4 at 2. Cappelle then added another five employees to each week's total based on the recollection of Plaintiff's counsel that Midwest listed at least five managers on its website in 2014. Finally, Cappelle added six workers for the weeks of May 26, 2014, through October 6, 2014, because Midwest's office manager, Brenda Grams, indicated Midwest employed a minimum of six workers during these weeks. ECF No. 22-1. Martinez contends that when these extra workers are added to the number of temporary employees already accounted for in the spreadsheet, she has shown that it "is entirely possible and probable that there were fifteen (15) workers per week over a period of twenty-one (21) weeks." ECF No. 44-1.

Martinez has not met her burden to establish that Midwest had a sufficient number of employees during the relevant time period. The Seventh Circuit's decision in *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435 (7th Cir. 1996), is instructive on this point. There, the plaintiff claimed the defendant satisfied the definition of an employer and submitted an affidavit stating that "throughout her employment," the defendant employed at least twelve full-time and twelve part-time employees in the office. *Id.* at 439. The affidavit, however, failed to indicate whether the employees were "employed within the same time period, how many employees worked on particular days, or whether there were fifteen or more employees on each day of any particular week." *Id.* The Seventh Circuit concluded the plaintiff's affidavit was "certainly too vague a submission to carry her burden," as her statements were made at a "level of generality" that was insufficient to survive summary judgment. *Id.* at 439–40.

In this case, Martinez has similarly failed to present sufficient evidence to support her claim that, in addition to the temporary employees that have been verified through the records provided

by two temporary agencies, Midwest employed an additional eleven to seventeen unidentified employees every week who did not appear on the company's payroll. As an initial matter, there is no basis to include the five managers that were purportedly listed on Midwest's website to the employee count since the website, as it existed in 2014, only lists two managers. ECF No. 38-3. Counsel's vague recollection of what he thinks he saw on the website at some earlier point in time is not evidence.

As to the remaining unnamed individuals, Cappelle's decision to include them as additional employees is based on Midwest's answers to an interrogatory that asked in general how many people Midwest directly employed over the relevant time frame. Cappelle's decision finds no support in the payroll records that Grams reviewed and upon which Grams' declaration is based. The payroll records on which Grams' declaration is based establish that Midwest had only eight direct employees for six weeks and seven employees for twelve weeks in 2014. For the balance of the time shown, the number of employees ranged between four and six. ECF No. 19-1, ¶¶ 42–51. When those are added to the temporary employees shown on Cappelle's spreadsheet during the same weeks, the totals still do not meet the required threshold of fifteen employees for at least twenty weeks.

Even if the addition of the temporary employees shown on Cappelle's spreadsheet, combined with Midwest's direct employees, did meet the required threshold, we still would lack evidence sufficient to show that Midwest had the requisite "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." § 2000e(b). This is because the fact that a temporary employee was paid at the end of a week does not mean that he or she worked for Midwest every day that week. Since temporary employees are

direct employees of the staffing company that places them and do not appear on Midwest's payroll, it is presumably only on days when they work at a Midwest job site that they would be considered Midwest employees. Given this fact, Cappelle's spreadsheet by itself is insufficient to establish that the temporary employees worked for Midwest for the required number of weeks to make Midwest subject to Title VII. It thus follows that Martinez has failed to provide evidence from which a reasonable factfinder could conclude that Midwest employed at least fifteen individuals for twenty or more weeks during the relevant time period. Accordingly, Midwest is not an "employer" under Title VII.

**III. Conclusion**

For these reasons, Midwest's motion for summary judgment (ECF No. 17) is **GRANTED** and the case is dismissed. Martinez' amended motion to file a sur-reply (ECF No. 44) is **GRANTED**, and her motion to file an earlier version of her sur-reply (ECF No. 42) is **DENIED as moot**. The Clerk of Court is directed to enter judgment forthwith.

**SO ORDERED** this   11th   day of May, 2018.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court